**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                        |     |                                      |
|----------------------------------------|-----|--------------------------------------|
| IN RE:                                 | )   |                                      |
|                                        | )   |                                      |
| APPLICATION FOR ACCESS TO              | )   |                                      |
| GRAND JURY MATERIALS RELATING          | )   |                                      |
| TO HACK OF DEMOCRATIC                  | )   | Miscellaneous Action No. 1:23-mc-133-JEB |
| NATIONAL COMMITTEE                     | )   |                                      |
|                                        | )   |                                      |
|                                        | )   |                                      |
|                                        | )   |                                      |

**DEPARTMENT OF JUSTICE'S RESPONSE IN OPPOSITION**
**TO THE APPLICATION FOR RELEASE OF GRAND JURY MATERIALS**

**INTRODUCTION**

Citizen journalist Ryan Milliron has applied for the release of four categories of materials he alleges were presented to the grand jury in the Department of Justice's prosecution of the 2016 breach of the Democratic National Committee's computer network. No stranger to litigation over government information, Mr. Milliron maintains active lawsuits under the Freedom of Information Act ("FOIA") against various federal agencies. Now, in an effort to piggyback on those lawsuits and to discover whether or not the requested records exist, Mr. Milliron seeks disclosure of the alleged records under Federal Rule of Criminal Procedure 6(e). But the Rule's limited carveouts to grand jury secrecy do not accommodate Mr. Milliron's request. The Court should therefore deny the Application.

From start to finish, the Application makes plain that it is brought in a journalistic endeavor to expose alleged wrongdoing in a federal prosecution. Whatever the merits of that mission, Rule 6 does not permit disclosure of grand jury materials for expository ends. And D.C. Circuit precedent leaves no doubt that courts cannot enlarge Rule 6's carveouts to grand jury secrecy. Furthermore, as a non-party to the prosecution, Mr. Milliron lacks standing to participate in it, and

so the requested materials are of no use to him within the Rule's contemplation.

Nor are the requested grand jury materials conceivably of use in Mr. Milliron's ongoing FOIA litigation. Thus, Rule 6(e)(3)(E)(i)'s requirement that a request be "preliminarily to or in connection with a judicial proceeding" is not met. Mr. Milliron does not explain, nor can one readily discern, how he might use the grand jury material in preparation for, or execution of, that litigation. Summary judgment in FOIA cases concerns access to information and the legal issues surrounding production or withholding of that information. The very information Mr. Milliron seeks in his FOIA suits, in other words, would not assist him to prepare for, or be useful in, those suits.

The lack of a nexus to a judicial proceeding is enough to doom the Application. Were it not, the Application also fails to show a particularized need for the alleged grand jury materials for use in the FOIA cases. There is no apparent possibility of injustice in those cases. Rather, the FOIA cases themselves are the proper venue for Mr. Milliron to obtain, if at all, the information he seeks there and here.

## BACKGROUND

### A. Procedural Background

Acting Attorney General Rod Rosenstein appointed Robert Mueller to the position of Special Counsel within the Department of Justice in May 2017. Exh. 1 (Attorney General Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters, at 1 (May 17, 2017)). Special Counsel Mueller's mandate encompassed the investigation of "any links and/or coordination between the Russian government" and then-President Donald Trump's campaign, as well as any matters that arose from that investigation. *Id.* Along with the two-volume report that marked the end of Special Counsel

Mueller's investigation in 2019, his office obtained indictments of various individuals alleged to have engaged in illegal conduct in connection with the 2016 presidential election.

Among those indictments was one against twelve Russian nationals. *See generally* Indictment, *United States v. Netyksho*, No. 1:18-cr-215 (D.D.C. July 13, 2018), ECF No. 1. The grand jury charged these individuals, all members of a Russian intelligence agency, with violations of various federal laws in connection with their "hack" of the Democratic Congressional Campaign Committee, the Democratic National Committee ("DNC"), and Hillary Clinton's presidential campaign, and release of information they obtained through the hack. Press Release, U.S. Department of Justice, Grand Jury Indicts 12 Russian Intelligence Officers for Hacking Offenses Related to the 2016 Election (July 13, 2018), https://www.justice.gov/opa/pr/grand-jury-indicts-12-russian-intelligence-officers-hacking-offenses-related-2016-election. The Department has yet to try the case, as all twelve defendants remain fugitives. Reassignment Order, *United States v. Netyksho* (D.D.C. July 1, 2021), ECF No. 5; *see also* App. at 12.

Petitioner Ryan Milliron, a self-styled "independent journalist," doubts not only that the twelve *Netyksho* defendants breached the DNC's network, but that such a breach took place at all. *See* App. at 2 (asking, rhetorically, whether the "alleged hack" was Russian interference or "the opening salvo of a scheme by operatives tied to Hillary Clinton to create the right environment to launder the Steele dossier and other claims to the media"); *id.* at 19 ("Applicant believes the *Netyksho* case brought by Special Counsel Robert Mueller to be an exercise of an ill-conceived cover-up campaign."). Accordingly, Mr. Milliron has tasked himself with "properly examin[ing] the conclusions of the Special Counsel" investigation. *See id.* at 2. His sleuthing thus far has led him to suspect wide-ranging government negligence and overt misconduct. *See id.* at 4–5 (suggesting misrepresentations by a Department of Defense component); *id.* at 7 (insinuating

government obfuscation as to the role of "Clinton-connected cyber researchers"); *id.* at 8 (describing purported suppression of impeachment evidence); *id.* at 9–10 (accusing the Department of shoddy investigation); *id.* at 11 (reciting instances of purported prosecutorial misconduct).

Unsatisfied, Mr. Milliron believes there is more to this story than he has uncovered so far. To date, his preferred tool for obtaining information from the government has been FOIA, 5 U.S.C. § 552, and its state-law analogues.  He has three FOIA lawsuits pending in the Western District of Michigan over requests that, broadly speaking, target records related to Russian interference in the 2016 presidential election.  *Milliron v. NARA*, No. 23-cv-1222 (W.D. Mich.); *Milliron v. U.S. Dep't of Def.*, No. 1:23-cv-30 (W.D. Mich.); *Milliron v. U.S. Dep't of Def.*, No. 1:22-cv-782 (W.D. Mich.).  He has also brought at least one lawsuit in state court under the state's FOIA equivalent. *Milliron v. Antonakakis*, No. 2022CV368332 (Ga. Sup. Ct.).  Mr. Milliron now adds the instant Application.

### B.  Statutory Background

The Supreme Court has repeatedly emphasized the unique importance of the federal grand jury, an institution the Constitution itself provides as a procedural safeguard for individual liberty. *See* U.S. Const., amend. V.  Dating back to 12th-century England, the grand jury has the "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions."  *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972) (footnote omitted); *see generally United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423–24 (1983).

The proper functioning of the grand jury system depends upon the secrecy of its proceedings. As the Supreme Court has explained:

> [I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 219 (1979) (footnotes omitted); *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399–400 (1959). Accordingly, "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized." *Sells Eng'g*, 463 U.S. at 425 (internal quotations omitted).

Rule 6(e) codified the traditional rule of grand jury secrecy. *See, e.g.*, S. Rep. No. 354, at 7–8 (1977), *reprinted in* 1977 U.S.C.C.A.N. 527, 530–32. The Rule was enacted directly by Congress and has the force and effect of a statute. *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981) (reviewing legislative history of Rule 6(e)). The Supreme Court has explained that the Rule's narrow exceptions operate as "an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," and reflect Congress's "judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy." *United States v. Baggot*, 463 U.S. 476, 479–80 (1983).

Accordingly, Rule 6(e) requires enumerated categories of individuals to maintain grand jury secrecy, "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2)(B). Rule 6(e)(3)(E) then specifies the only circumstances in which a district court may authorize the disclosure of grand jury matters. *McKeever v. Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019). Of those

circumstances, only one is arguably relevant here:  Rule 6(e)(3)(E)(i), which provides that the Court may authorize disclosure of a grand jury matter (at a time, in a manner, and subject to any other conditions that the Court directs), "preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).[1]

One applying for disclosure under Rule 6(e)(3)(E)(i) must make three showings.  He must point to a "judicial proceeding" within the meaning of the Rule.  *In re Capitol Breach Grand Jury Investigations Within the District of Columbia*, 339 F.R.D. 1, 23 (D.D.C. 2021) (quoting Fed. R. Crim. P. 6(e)(3)(E)(i)).  He must establish that the requested disclosure is "preliminarily to" or "in connection with" the proceeding.  *Id.*  And finally, the movant must make a strong showing of "particularized need" for the shielded materials.  *Id.*

## ARGUMENT

### The Court Should Deny Mr. Milliron's Request as Outside the Scope of Federal Rule of Criminal Procedure 6(e)

The Application is plainly an attempt to obtain alleged grand jury materials for journalistic purposes.  Rule 6(e) does not permit disclosure for journalism, nor for any purpose other than those expressly enumerated in the Rule.  The asserted public interest in exposing wrongdoing in a criminal prosecution is not such an enumerated exception.  Nor can the criminal prosecution constitute the requisite "judicial proceeding" within the meaning of Rule 6(e)(3)(E)(i).  Mr. Milliron is not a party to the judicial proceeding he argues was corruptly initiated and executed, and thus cannot participate in it.  Insofar as he seeks to rely on his FOIA cases as the qualifying judicial proceedings, there is no credible use in those proceedings for the materials he claims exists.

---

[1]  Certain other Criminal Rules provide for disclosure of grand jury materials in limited circumstances not relevant here.  *See* Fed. R. Crim. P. 16(a)(1)(B)(iii) (mandating disclosure to a defendant of his "recorded testimony before a grand jury"); Fed. R. Crim. P. 26.2(f)(3) (requiring disclosure to a defendant of a witness's "statement to a grand jury, however taken or recorded" pursuant to the Jencks Act, 18 U.S.C. § 3500).

By extension, Mr. Milliron can show no need, much less a particularized need, for the alleged grand jury materials.

## I.     The Application Seeks Release for a Purpose Not Recognized by Rule 6.

From the get-go and throughout, Mr. Milliron makes clear that he has filed this Application in his role as a journalist.  In his eyes, a "broad narrative regarding a vast Russian conspiracy to interfere with our election" culminated in the Department's sham prosecution of the twelve *Netyksho* defendants, but since "has crumbled."   App. at 2.   And "[d]espite numerous investigations, nobody has ever properly examined" the Special Counsel's conclusions regarding the breach.  *Id.*  For those reasons, per Mr. Milliron, "[i]t is time for more transparency."  *Id.* Indeed, the Application repeatedly refers to a need for transparency.  *See id.* at 7 (claiming a need to rectify "obfuscat[ion]" of "the roles of the Clinton-connected cyber researchers from the Court, the public, and Congressional oversight"); *id.* at 13 (describing a desire to evaluate "whether the Department of Justice complied with department regulations"); *id.* at 15 ("[T]here is an unrelenting need to provide transparency to the American government[.]"); *id.* ("There is an additional need to correct the public record relating to public statements that are erroneous.").

To supplement the reporting Mr. Milliron has done so far, *id.* at 13, he seeks "to present the full story to the American public on what is facially a corrupt Mueller investigation."  *Id.* at 14.  To do so, Mr. Milliron claims a need for four categories of information allegedly presented to the *Netyksho* grand jury.  *Id.* at 1.  To what end?  Again, a journalistic one:  to inform the public, whose "interest is immense," and whose attention to governmental wrongdoing may result in a "push for changes" to the law that binds the government as prosecutor.  *Id.* at 19.

Fatally for the Application, Rule 6 offers no remedy to journalists in search of purported grand jury materials.  By default, grand jury proceedings are secret.  Fed. R. Crim. P 6(e)(2)

("Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury[.]"); *In re N.Y. Times Co.*, 657 F. Supp. 3d 136, 145 (D.D.C. 2023).  Rule 6 provides but a few exceptions to the general obligation to maintain the confidentiality of grand jury matters.  *See* Fed. R. Crim. P. 6(e)(3).  And of those, only one may be invoked by a person who is neither a government attorney nor a defendant:  Rule 6(e)(3)(E)(i).  In turn, Rule 6(e)(3)(E)(i) requires that grand jury materials be released only if the applicant can show use "preliminarily to or in connection with a judicial proceeding."  Some speculation that litigation might arise is insufficient.  Rather, a court reviewing an application under Rule 6(e)(3)(E)(i) must focus "on the *actual use* to be made of the material."  *Baggot*, 463 U.S. at 480.  "If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under [Rule 6(e)(3)(E)(i)] is not permitted."  *Id.* (citation omitted).

Because Mr. Milliron seeks transparency in the public interest, not litigation preparation, his request falls outside the strictures of Rule 6.  *See In re Reporters Comm. for Freedom of the Press*, Misc. No. 19-45, 2019 WL 4707242, at *5 (D.D.C. Sept. 26, 2019) ("The Reporters Committee asserts a need for the requested material to aid in 'journalists' newsgathering activities, as well as its own efforts to ensure government transparency.'  To be sure, those activities and efforts have significant value, but they are wholly unrelated to preparing for or conducting a judicial proceeding, and therefore fall outside the scope of this exception." (internal citation omitted)).  There is no public interest exception to grand jury secrecy, and the Court is not at liberty to indulge Mr. Milliron's request by supplementing Rule 6's scheme with further exceptions.  Rather, Rule 6's "list of exceptions is exhaustive."  *McKeever*, 920 F.3d at 845.

The Application stops short of stating outright that Mr. Milliron seeks the information for use in the *Netyksho* proceedings themselves under Rule 6(e)(3)(E)(i).  *See* App. at 8 (describing a

purported suppression of information and resulting *Brady* violation); *id.* at 11 ("Prosecutorial Misconduct").  All the same, to the extent the Application can be read to suggest as much, it is easily rejected.  Mr. Milliron's participation in *Netyksho* is entirely implausible.  To start, he is not a party in *Netyksho*, and it is far from obvious he could become one.  *See United States v. Hubbard*, 650 F.2d 293, 311 (D.C. Cir. 1980) (declining to address whether non-party intervention in a criminal case is permissible).  The United States will fulfill its criminal discovery obligations— including those regarding the provision of *Brady* materials—if and when the fugitives turn themselves in or are otherwise brought to justice.  However, as Mr. Milliron is not one of those defendants, he simply lacks standing to bring a Fourteenth Amendment claim on their behalf. *United States v. Hansen*, 599 U.S. 762, 769 (2023) ("[L]itigants typically lack standing to assert the constitutional rights of third parties." (citing *Powers v. Ohio*, 499 U.S. 400, 410 (1991))).

## II.     Disclosure for Mr. Milliron's FOIA Cases Is Inappropriate.

### A.  The Requested Grand Jury Materials Have No Nexus to Mr. Milliron's Ongoing FOIA Cases.

Mr. Milliron suggests in passing, without further explanation, that his three ongoing FOIA actions constitute "judicial proceedings" under Rule 6(e)(3)(E)(i).  App. at 13–14; *id.* at 11–12. But the Application falls well short of showing any "actual use" in those proceedings.  *See Baggot*, 463 U.S. at 480 (emphasis omitted).  That shortcoming is fatal to his request.  *Capitol Breach Grand Jury Investigations*, 339 F.R.D. at 23 (applicant bears the burden of establishing compliance with Rule 6).  The most concrete connection the Application draws between the request and his FOIA litigation, in fact, appears to concede that the Application is meant to substitute for those cases, not to aid in their development or prosecution.  *See* App. at 12 ("In addition to a glaring need to inform the public about these matters, the requested disclosures will aid Applicant in ongoing FOIA litigation . . . where the government has refused to confirm or deny the existence

of documents relating to these Clinton-connected cyber researchers pertaining to the DNC hack investigation." (footnote omitted)).

Even if the Court accepted that Mr. Milliron's "primary purpose" in requesting these materials was for use in his three FOIA cases, what particular role they could play is left to sheer speculation. *See Baggot*, 463 U.S. at 480. "Most FOIA cases proceed in a typical fashion." *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266, 270 (D.D.C. 2022). "A member of the public submits a request; the agency searches for and locates responsive documents; and the agency releases all material in those documents not exempt from disclosure." *Id.* At summary judgment, FOIA litigants may dispute, for example, the propriety of withholdings under an exemption, *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 266 (2021), the framing of the request, *see generally Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 266, or the adequacy of the agency's search, *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015). Crucially, however, all of these legal issues, and the evidence used to make arguments related to them, turn on the FOIA litigation itself. In other words, it is not at all apparent how the materials sought would be of any actual use to Mr. Milliron in preparing for or carrying out his FOIA litigation. In any event, as Mr. Milliron concedes, his FOIA litigation is intended to obtain disclosure of the very information he alleges exists here. *See* App. at 12. Just as a Rule 6(e)(3)(E)(i) applicant cannot rely on the very litigation used to obtain release of the grand jury information she seeks, a plaintiff cannot rely on FOIA litigation instituted to obtain the same information as the "proceeding" contemplated by Rule 6(e)(3)(E)(i). *Cf. Baggot*, 463 U.S. at 480 (material sought must be for "actual use" in a proceeding (emphasis omitted)); *Douglas Oil*, 441 U.S. at 222 (focus in 6(e)(3)(E)(i) analysis is on use in "*another* judicial proceeding (emphasis added)); *In re Pitch*, 275 F. Supp. 3d 1373, 1379 n. 8 (M.D. Ga. 2017) ("His petition, he seems to argue, constitutes a 'judicial proceeding,' and

thus his request meets the *Douglas Oil* standard.  This bootstrap effort is a nonstarter in every way."), *overruled on other grounds by Pitch v. United States*, 953 F.3d 1226 (11th Cir. 2020) (en banc).

The purpose for which Congress enacted Rule 6(e)(3)(E)(i)'s exception to grand jury secrecy further illustrates the disconnect between this Application and that exception.  By tying permissible disclosure to other judicial proceedings, the Rule ensures that the trier of fact in another proceeding has the ability to arrive at the truth.  *Douglas Oil*, 441 U.S. at 222 n.12 ("[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'  Such use is necessary to avoid misleading the trier of fact." (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958))); *see also Doe v. Cabrera*, 126 F. Supp. 3d 160, 163 (D.D.C. 2015) (finding disclosure appropriate where a trial jury's verdict hinged on potential inconsistencies between a civil plaintiff's accusations of assault and her grand jury testimony on the same matter).  Similarly, as a matter of fairness between adversarial parties, the Rule may ensure one has access to essential information already in the other's possession.  *See Doe*, 126 F. Supp. 3d at 163–64 (so holding and citing other cases to the same effect); Grand Jury Law and Practice § 5:12 (Sara Sun Beale et al. eds., 2d ed. Dec. 2023).  Here, there is no risk of unfair disadvantage vis-à-vis an opposing party in different litigation, and thus the purposes of the Rule would not be served by disclosure of potential grand jury information.

### B.  Mr. Milliron Has Not Shown a "Particularized Need" for the Requested Grand Jury Materials for Use in His FOIA Cases.

A successful 6(e)(3)(E)(i) applicant must show not only the right kind of need—for use in a judicial proceeding—but also that the degree of that need is sufficiently pressing to merit intruding into the grand jury's private domain.  *Baggot*, 463 U.S. at 480; *see also id.* & n.4 ("The[]

- 11 -

inquiries [of particularized need] cannot even be made without consideration of the particulars of the judicial proceeding with respect to which disclosure is sought."). Even were Mr. Milliron to establish the requisite nexus to an appropriate judicial proceeding (which he has not), he cannot demonstrate particularized need. Particularized need exists where the materials sought are "needed to avoid a possible injustice in another judicial proceeding." *Sells Eng'g*, 463 U.S. at 443 (quoting *Douglas Oil*, 441 U.S. at 222–23). No such injustice is apparent here.

Mr. Milliron makes no attempt to explain why disclosure of the requested grand jury materials is necessary to avoid an injustice in his FOIA litigation.[2] Rather, after stating that the "requested disclosures are necessary," App. at 13, Mr. Milliron explains that two of his FOIA requests have failed to produce desired information. *Id.* at 13–14. In both cases, the Application explains, the relevant agencies refused to confirm or deny the existence of responsive records. If true, the appropriate locus to contest those responses is through summary judgment in the FOIA cases. *See generally ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013) (evaluating a *Glomar* response). Indeed, FOIA's accommodation of the grand jury secrecy rules confirms that Rule 6(e)(3)(E) cannot be used as an end run around FOIA, *Fund for Const. Gov't*, 656 F.2d at 867–68 ("It is quite apparent that by any definition Fed. R. Crim. P. 6(e) is a statute. . . . Therefore, the rule's ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3." (citation omitted)). It would be paradoxical indeed if a FOIA litigant met with either a *Glomar* response or a claim of Exemption 3 could simply apply to the court overseeing the grand jury for an order to obtain the same records due to a "particularized need" for the records in the FOIA suit. This Court should reject such an absurd result.

---

[2] Again, the alleged "injustice" in the *Netyksho* case is a non-starter, because Mr. Milliron lacks standing to participate in that case, and the public interest he seeks to vindicate by exposing the alleged grand jury information is not an enumerated exception to grand jury secrecy.

The self-evident lack of particularized need is buttressed by the availability of alternative routes to obtain the information sought.  *See Sells Eng'g*, 463 U.S. at 445 ("[I]n weighing the need for disclosure, the court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure.").  Chief among those routes here is FOIA, and its state-law equivalents, which have apparently served Mr. Milliron well to date.  *See* App. at 2–11, 19 ("Based on information developed by the Applicant through documents received and sources developed, Applicant believes the *Netyksho* case brought by Special Counsel Robert Mueller to be an exercise of an ill-conceived cover-up campaign.").  Attempting to preempt this point, Mr. Milliron describes needing additional information "to present the full story to the American public."  App. at 14.  But such an admission only reinforces that the primary purpose behind the Application is one not recognized by Rule 6.  *Reporters Comm. for Freedom of the Press*, 2019 WL 4707242, at *5; *McKeever*, 920 F.3d at 845.

Mr. Milliron's broad request for any and all alleged grand jury information in the investigation at issue is a clear fishing expedition constituting just the opposite of "particularized" need.  Even were his FOIA suits valid "proceedings" within the meaning of 6(e)(3)(E)(i), there is no need – particularized or otherwise – for their use in a FOIA case.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court deny the Application in full.

Date:  January 19, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

Federal Programs Branch

/s/ *Simon Gregory Jerome*
SIMON G. JEROME
D.C. Bar No. 1779245
Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 514-2705
Simon.G.Jerome@usdoj.gov

*Counsel for Respondent*