IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION FOR ACCESS § | |
| TO GRAND JURY MATERIALS § | Miscellaneous Action No. 1:23-mc-133-JEB |
| RELATING TO HACK OF § | Hon. Judge James E. Boasberg |
| DEMOCRATIC NATIONAL § | |
| COMMITTEE § | |

**APPLICANTS' REPLY MEMORANDUM IN SUPPORT OF APPLICATION**

Applicant Ryan Milliron, Pro Se, hereby replies in support of their Application for access to Grand Jury materials relating to the hack of the Democratic National Committee.

In its January 19, 2024 response to the Application, the government appears to primarily makes 3 arguments:

1) There is no exception in rule 6(e) for materials to be released for journalistic purposes.
2) There is no "judicial proceeding" meeting the requirements of a three-part test prescribed by *Douglas Oil*.
3) The Application fails to show a "Particularized Need" meeting the *Douglas Oil* standard.

**Introduction**

As an initial matter, the government correctly describes the Supreme Court's intent on grand jury secrecy, but misapplies it here:

> [I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 219 (1979) (footnotes omitted); see also *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399–400 (1959).

The *Netyksho* case has already returned an indictment, thus rendering the primary applicable concern of subjecting innocent persons to public ridicule to be a moot consideration for supporting further secrecy. Potentially innocent persons have already been subject to the intense public ridicule that comes with a federal indictment. If the disclosures would have any impact, it would be to dissuade questionable investigative tactics on the part of the government.

Furthermore, the interests of justice turn on preventing the conviction of innocent persons. Here, the requested disclosures would not conceivably begrudge the defendants of a fair trial nor taint a prospective jury pool. They would in fact aid the defendants in the preparation of a defense against a prosecution apparently turning on the word and work of researchers tied to false, suspicious allegations of a secret communications channel and connected to Hillary Clinton.[1]

### The Application Is Inside The Scope of Federal Rule of Criminal Procedure 6(e)

The government misconstrues the journalistic intent of the Applicant as precluding relief under Rule 6(e)(3)(E)(i). The rule and prevailing case law does not limit applications to certain preferred intentions by the filers.[2] In support of their contention, the government cites *Pitch v United States* 17-15016 (11th Cir. 2020) (en banc), a case where the applicant sought materials relating to a 1946 grand jury investigation into unsolved murders for the purposes of a book. There, the Applicant did not articulate any ongoing or contemplated judicial proceedings (including under FOIA) and therefore failed to meet the *Douglas Oil* standard.

Rule 6(e)(3)(E)(i) authorizes disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding.

In interpreting this, the courts have consistently applied a three-part test: (1) [the] material sought is needed to avoid a possible injustice in another judicial proceeding; (2) the

---

[1] In its motion seeking a delay for a response to this Application, the government in part cited a need to converse with former members of the Special Counsel Mueller team "knowledgeable about the issues raised in the Application." If the Applicant was incorrect about any assertions in the application, the government has declined an opportunity to say so.

[2] Applicant also notes local rule 57.6, as published in January 2024, as being designated for news organizations and interested persons to seek relief relating to a criminal investigative or grand jury matter. The Court maintains authority to order the release of materials under Rule 6(e) exceptions as articulated in *McKeever v. Barr*, No. 17-5149 (D.C. Cir. 2019).

need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only material so needed. In re Sealed Case, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (quoting, inter alia, *Douglas Oil Co. of Cal. v Petrol Stops* NW., 441 U.S. 211, 222 (1979)).

## The Application Properly Seeks Relief Preliminarily To And In Connection With Valid Judicial Proceedings

As part of his journalistic intentions to uncover gross misconduct relating to the investigation of the hack of the Democratic National Committee, Applicant has ongoing lawsuits under the Freedom of Information Act, and Georgia's Open Records FOIA equivalent. These are valid "judicial proceedings" for relief under rule 6(e).

The case the government cites in arguing against this is *Fund for Constitutional Gov. v. Nat. Archives*, 656 F.2d 856 (D.C. Cir. 1981). The holding from that case is that "exceptional interests" must be demonstrated to warrant disclosure when investigative exemptions are claimed. To the extent that the case is similar to this Applicant's cases, Applicant believes that burden has been met. In contrast to that case, in the Applicant's current litigation, the government has not acknowledged the existence of records pertaining to the subject matters requested for disclosure - let alone asserted a valid exemption claim.

*Fund for Constitutional Gov. v. Nat. Archives* also held that Rule 6(e) is applicable (allowing the initial invocation of exemption 3) if the material was a direct result of the grand jury investigation, and **not** if the material was "coincidental" to the grand jury investigation. That creates a burden on the court to determine factually why the cyber researchers were involved in the DNC hack investigation; which is currently in controversy, whether the cyber researchers were tasked by an Agency or submitted materials of their "own volition" as DARPA indicated. Applicant also believes the intent of Rule 6(e) protections to be centered on shielding the jurors and subjects of grand jury investigations, not agents of the government. Most importantly, the litigants in *Fund for Constitutional Gov. v. Nat. Archives* did not petition the court for disclosure under rule 6(e)'s exceptions and simply challenged the claimed FOIA exemption.

There is no "absolute" exemption within the meaning of FOIA (Nor should GLOMAR stand in place of a valid exemption), a tool intended to assist in uncovering corruption. This is particularly true when the government has acted in bad faith or in instances of gross misconduct.

If there were absolute exemptions, the government could freely abuse citizens with malicious prosecutions and when those defendants flee in fear or decide not to travel to the United States to defend themselves, permanently sequester evidence of its own misconduct as "grand jury" material.[3] That was not the legislative intent of Congress.

Lawsuits against the government and against someone in their individual capacity constitute valid judicial proceedings for disclosure under Rule 6(e).

"[T]he term "judicial proceeding" has long and repeatedly been interpreted broadly, and courts have authorized the disclosure of grand jury materials "in an array of judicial and quasi-judicial contexts" outside of Article III court proceedings — such as administrative proceedings before the United States Tax Court." *App. for Mueller Report Grand Jury Materials*, [414 F.Supp.3d at 150](#) (collecting cases). *Comm. on Judiciary, U.S. House of Representatives v. U.S. Dep't of Justice (In re Comm. on Judiciary)*, 951 F.3d 589, 596 (D.C. Cir. 2020). See also *Pitch v. United States*, 953 F.3d 1226 (11th Cir. 2020) where the court overturned the district court's assertion of inherent authority to release grand jury materials outside of rule 6(e), with the original ruling relying on precedent set in *In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir. 1984). *In dicta* the court noted *Hastings* reached the right decision (to authorize release of the Grand Jury materials), but for the wrong reason, noting that "…the "judicial proceeding" exception, Fed. R. Crim. P. 6(e)(3)(E)(i), plainly permitted the limited disclosure of the grand jury records to the Investigating Committee of the Judicial Council of the Eleventh Circuit in *Hastings*." *Id* 32. "In the end, the panel affirmed the disclosure in part because the proceeding was at least "closely akin" to a judicial proceeding, even if it was not "a judicial proceeding in the strict legal sense" of the term." *Id* 34.

Lawsuits against the government, and against persons in their individual capacities that seek to compel compliance with the law(s) constitute valid judicial proceedings under rule 6(e).

---

[3] There are relatively few instances where there have been similar abuses of the grand jury system by the government. Applicant is most familiar with the case against Senator Ted Stevens, a case where the government did not meet its obligations under *Brady* and committed egregious abuses that resulted in an improper indictment and conviction. If no whistleblower came forward, and instead a journalist had come across the government's misconduct in circumstances similar to this case, particularly if the government refused to confirm or deny the existence of those documents, would the evidence of misconduct really be properly shielded from disclosure?

**Preliminarily to Judicial Proceedings**

In addition to the noted current FOIA litigation, which independently stands as sufficient grounds under the *Douglas Oil* standard, Rule 6(e) does not require, and case law does not hold, that Application be related to **ongoing** litigation, but instead also offers relief "preliminarily" - a broad definition - to a judicial proceeding. While additional FOIA litigation from the Applicant relating to the requested records is likely, including under various state statutes, the Applicant is currently contemplating *qui tam* (False Claim Act) lawsuits both at the federal and state level relating to the cyber researchers. As indicated in the paragraph of DARPA's letter to Senator Grassley noted in the Application, DARPA asserts no taxpayer funds were used in the creation of the attribution analysis. In comments to the *Washington Examiner*, DARPA also stated they gave no authorization for the cyber researchers to investigate the DNC hack or Alfa Bank allegations. That is contradicted by exhibits 1 and 3 to the Application where the cyber researchers assert they did use DARPA resources in their various analyses. Specifically, this involved the use of DARPA funds to purchase and use consumer data from Neustar, a company where Rodney Joffe was employed, under the auspices of a DARPA contract awarded to Georgia Tech called "Rhamnousia". In addition, as indicated by exhibit 3 and other files in the Applicant's possession, the cyber researchers assert their work was done at the tasking of the Department of Justice and DARPA as they argued to have their legal fees paid for by the state. That argument ultimately resulted in the reimbursement of approximately $600,000 in legal fees by the State of Georgia. The potential misuse of public funds could run much higher, particularly if fraud can be established. If DARPA's public denials to the media and Senator Grassley of any authorization to investigate the DNC hack or Alfa Bank allegations are true, Applicant intends to file lawsuits to recover taxpayer funds.

**Netyksho**

While the government dismisses the possibility that the Applicant could have standing in the *Netyksho* case, Applicant is not so sure. The Courts have at various times appointed amicus curiae to provide assistance in criminal cases. In *United States v Flynn*, the Court was exploring

the use of an amicus to continue the prosecution of Michael Flynn after the Department of Justice attempted to drop the case amidst the disclosure of *Brady* violations.[4]

If the interests of justice could substantiate the contemplation of an amicus in this extraordinary manner, it does not seem outlandish that this court might consider the appointment of an amicus to bring controversy on behalf of the defendants if the evidence warrants it.

If the grand jury materials demonstrate the misconduct and malfeasance that Applicant alleges, in one of the most important investigations in history, Applicant does anticipate requesting standing in *Netyksho* as amicus in the absence of the defendants to attempt to protect them from a malicious prosecution.

## Particularized Need

The government argues that the requested records have no nexus to ongoing litigation. That is demonstrably false. As noted in the Application, several of Applicant's FOIA's specifically concern the cyber researchers and their role in the DNC hack investigation. Thus far, the government has processed no records, claimed no exemptions, and has only asserted a GLOMAR response that lacks statutory authority.

Without these disclosures, the Applicant may not have sufficient evidence to overcome the government's improper assertion of GLOMAR, particularly in light of the presumption of good faith afforded to the government. These disclosures would demonstrate the underlying misconduct of the Agencies as well as the improper motivations behind the GLOMAR claims themselves. If overcome, the government could claim exemptions requiring this Application from the Applicant.

The claiming of GLOMAR to hide the abuses and misconduct of the Department of Justice is itself an egregious injustice, one specifically forbidden by Executive order 13526 Sec. 1.7 (a) (1) and (a) (2), which state:

> (a) In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to:
>
>   (1) conceal violations of law, inefficiency, or administrative error;
>
>   (2) prevent embarrassment to a person, organization, or agency;

---

[4] If the requested disclosures here substantiate Applicant's allegations, the case against Michael Flynn brought by Special Counsel Mueller establishes a pattern and practice of flagrantly disregarding long-standing protections for defendants.

Obtaining these disclosures will aid the applicant in demonstrating the misconduct of the agencies subject to the FOIA litigation and piercing the presumption of good faith that protects the government agencies from discovery, a tool disfavored in FOIA litigation. The disclosures will establish that the documents exist, they have been improperly classified, and that the agencies are acting in bad faith to deny access to records to hide their own misconduct. If the records substantiate that the Georgia Tech cyber researchers were not tasked by the Department of Justice and their use of DARPA resources was not authorized (as DARPA, the only government agency to comment on this, has publicly stated), additional litigation will be filed to recover taxpayer funds and confront the abuse of government programs. If the disclosures demonstrate that the cyber researchers were tasked by the government, the Applicant will have a broader foundation to pursue public documents under FOIA from the personal email accounts of officials at DARPA as well as under state-FOIA equivalents that allow the pursuit of public documents held in private email accounts.

The *Douglas Oil* standard stops short of requiring a **demonstrated** or **likely** injustice, and instead only requires a showing that a **possible** injustice may occur. In conjunction with rule 6(e)(3)(E)(i) applying to efforts preliminary to a judicial proceeding, the standard should be interpreted broadly for its remedial effects.[5]

Applicant also notes that numerous investigations relating to the events of 2016 have been conducted including from the FBI prior to Crossfire Hurricane, the Crossfire Hurricane investigation itself, Special Counsel Robert Mueller, at least 2 inspector general investigations, two formal Congressional investigations and many additional inquiries, and Special Counsel John Durham. Adding to this are a significant number of FOIA requests and lawsuits from the public pertaining to the DNC hack investigation and alleged Russian interference more broadly.

Not a single one of those proceedings ever resulted in the disclosure of the role of these Clinton/Alfa Bank cyber researchers in the DNC hack attribution or in assisting Special Counsel

---

[5] If the Court finds that the Application does not meet the *Douglas Oil* standard, Applicant respectfully suggests that the interpretation of Rule 6(e)(3)(E)(i) has strayed too far afield of the text and requires revising. While *McKeever v. Barr*, No. 17-5149 (D.C. Cir. 2019) clarified the lack of inherent authority outside of rule 6(e) for the court to order the release of materials, the straight forward language of the rule still supports a broad level of discretion for the courts to release materials preliminarily to or in connection with a judicial proceeding. It's notable that *Douglas Oil* preceded *United States v Williams* and *United States v Mechanik,* cases that eliminated the court's ability to cure grand jury abuses committed by the government. In consideration of grand jury abuses in the modern era, the Court's sole remedy appears to be a limited ability to order the disclosure of materials in connection to judicial proceedings, *sua sponte* or upon application by a third party. Applicant views the *Douglas Oil* standard as one primarily resting on a balancing test between disclosure and continued secrecy, a test that favors disclosure here.

Robert Mueller. Even the Department of Justice here in its motion for delay, has admitted a need to contact former members of the Special Counsel Mueller team to assess the validity of Applicant's allegations.

The government appears to have sequestered a large amount of information under the pretense of Grand Jury material that has successfully kept it hidden from disclosure in numerous proceedings. The vast implications of the disclosure or non-disclosure of this revelatory material will reverberate through every proceeding that Applicant is a party to and beyond.

The Application meets the burden prescribed by the *Douglas Oil* standard and whether to order the release of the requested documents is firmly within the discretion of the Court.

Respectfully submitted,

Dated: January 22, 2024

/s/  Ryan Milliron

Ryan Milliron, Pro Se
PO Box 516
211 W Exchange St
Spring Lake, MI 49456