UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION FOR ACCESS TO GRAND JURY MATERIALS RELATING TO HACK OF DEMOCRATIC NATIONAL COMMITTEE** | Misc. No. 23-133 (JEB) |

### MEMORANDUM OPINION

Deep in the throes of the 2016 presidential campaign, the Democratic National Committee announced that Russian cyber operatives had hacked its servers. The hackers subsequently released stolen emails and other documents on the internet — much of it damaging to Hillary Clinton's candidacy. What followed was a two-year federal investigation into the hack and (ultimately) an indictment of the alleged culprits in United States v. Netyksho, Crim. No. 18-215 (D.D.C.). Dubious of the legitimacy of that inquiry, Ryan Milliron — an independent journalist — has filed a *pro se* Application seeking an extraordinarily broad and ill-defined range of materials from the grand-jury proceedings precipitating the indictment. Finding no basis whatever for disclosure under Federal Rule of Criminal Procedure 6(e), the Court will deny the Application.

**I.  Background**

On May 17, 2017, Acting Attorney General Rod Rosenstein appointed Robert Mueller as a Special Counsel to investigate "the Russian government's efforts to interfere in the 2016 presidential election" and prosecute any federal crimes arising therefrom. See ECF No. 7-1 (Appointment Order). That broad remit included, notably, "any links and/or coordination between the Russian government and individuals associated with the campaign of" Clinton's chief rival, Donald Trump. Id. An investigation ensued, which culminated in a 448-page report

1

and multiple criminal prosecutions.  See generally, Special Counsel Robert S. Mueller, III, Report on the Investigation into Russian Interference in the 2016 Presidential Investigation, https://perma.cc/DH9Z-CTMY; id., App'x D.

One such prosecution, instituted in July 2018, charged twelve officers of a Russian military-intelligence agency with hacking email accounts affiliated with the Clinton Campaign and the computer networks of the DNC and Democratic Congressional Campaign Committee during the 2016 presidential campaign.  See Netyksho, ECF No. 1 (Netyksho Indictment), ¶¶ 1–4.  The indictment alleges that those officers released stolen emails and documents on the internet under the pseudonym "Guccifer 2.0" (among others) to conceal their connections to Russia.  Id., ¶ 6.  The case has not proceeded beyond the charging phase, however, as no defendant has been apprehended to this day.  See id., ECF No. 5 (Reassignment Order).

This *précis* might strike many as old news, now eight years later.  But Milliron's interest in the matter has not abated.  He suspects that Russia (and the defendants in Netyksho, for that matter) did not hack the DNC after all; rather, he posits that Clinton-affiliated actors may have fabricated that "narrative" to "create the right environment to launder" salacious claims against Trump to the media.  See ECF No. 1 (App.) at 2.  He also charges the government with improperly relying on those Clinton-affiliated sources in securing the indictment and failing to disclose that reliance to the public and the still-fugitive Netyksho defendants.  See id. at 1–2, 11, 13 (characterizing this information as "highly exculpatory" Brady material).

The thrust of his rather farfetched theory, without getting too deep into the weeds, is that three "cyber researchers" purportedly connected to Clinton — Rodney Joffe, Manos Antonakakis, and David Dagon — performed an analysis attributing the hack to Russia and, further, alleging the existence of a "secret communications channel between Trump and

Vladimir Putin." Id. at 2. They then provided their research to the Defense Advanced Research Projects Agency — a branch of the Department of Defense focused on technological research and development — which, in turn, transferred it to the Department of Justice and Special Counsel Mueller. See id. at 3–5 & n.5, 7. This "arrangement," he fears, "served as a means to obfuscate or hide the roles of the Clinton-connected cyber researchers from the Court, the public, and Congressional oversight." Id. at 7.

Hoping to corroborate that theory and supplement the research he has already done, he filed the instant Application on December 7, 2023, requesting the following:

> (1) All portions of Grand Jury materials relating to the roles of Rodney Joffe, Manos Antonakakis, and David Dagon in the investigation into the hack of the Democratic National Committee; (2) any transcripts of underlying grand jury testimony or grand jury exhibits that relate to evidence provided or influenced by Joffe, Dagon, or Antonakakis; (3) any transcripts of underlying grand jury testimony or grand jury exhibits that relate to evidence provided or influenced by entities tied to Rodney Joffe, including: (a) Packet Forensics (b) Neustar (c) ERP Services (d) Vostrom Holdings; (e) Internet Media Network (4) any transcripts of underlying grand jury testimony or grand jury exhibits that relate to evidence provided or influenced by the Defense Advanced Research Projects Agency ("DARPA") or more broadly, the Department of Defense ("DOD").

Id. at 1. He requests, additionally, that the Court review *in camera* "the totality of investigative materials relating to the hack of the [DNC] stemming from Joffe, Dagon, and Antonakakis to assist" it in "identifying the full extent of prosecutorial misconduct and government misstatements," "to better inform the grounds of [Milliron's] limited request for materials here," and to "safeguard[]" against a potentially "meritless indictment." Id.

## II.     Legal Standard

As the Supreme Court has recognized, "[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. of Cal. v. Petrol

Stops Nw., 441 U.S. 211, 218 (1979).  Such secrecy safeguards the interests of, among others, witnesses, who may hesitate to testify "fully and frankly," if at all; grand jurors, who may be subjected to retribution or inducements; and persons accused but exonerated, who may otherwise be "held up to public ridicule."  Id. at 219.  Federal Rule of Criminal Procedure 6(e)(2)(B), accordingly, bars the disclosure of matters occurring before a grand jury by certain enumerated persons.  There are several exceptions, however.  One of them, as relevant here, permits the court to authorize disclosure of "a grand jury matter . . . preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).

       To trigger that provision, a party seeking grand-jury materials must meet two requirements.  The first is, as the Rule states, that the sought-after information is needed for some purpose that is preliminary to or in connection with another judicial proceeding.  The second — not apparent from the Rule itself but well established in case law — is a showing of "particularized need."  United States v. Baggot, 463 U.S. 476, 480 (1983).  "The two requirements, though related in some ways, are independent prerequisites to . . . disclosure."  Id. (cleaned up).  The "judicial proceeding" requirement imposes a "criterion governing the kind of need that must be shown," while the "particularized need test is a criterion of degree."  Id.

       More specifically, the former "reflects a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy," and that "the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated."  Id.  "[I]t is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge.  The focus is on the actual use to be made of the material.  If the primary

4

purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure . . . is not permitted." Id.

The latter, meanwhile, requires the party to show that the information "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the[] request is structured to cover only material so needed." Douglas Oil, 441 U.S. at 222.  This standard is "highly flexible . . . and sensitive to the fact that the requirements of secrecy are greater in some situations than in others."  United States v. Sells Eng'g, 463 U.S. 418, 445 (1983).  Although the party seeking disclosure must show "with particularity" why it needs the information, see United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958), it will face a "lesser burden" as "the considerations justifying secrecy become less relevant." Douglas Oil, 441 U.S. at 223.

### III.    Analysis

Because the sole basis for Milliron's Application is the "judicial proceeding" exception under Rule 6(e)(3)(E)(i), he must meet the two foregoing requirements.  The Court discerns three categories of judicial proceedings for which Milliron asserts the requested grand-jury documents are needed: (1) the Netyksho prosecution; (2) a set of cases Milliron has filed under the Freedom of Information Act in the Western District of Michigan — namely, Milliron v. Nat. Archives and Records Admin., No. 23-1222 (W.D. Mich.), Milliron v. U.S. Dep't of Def., No. 23-30 (W.D. Mich.), and Milliron v. U.S. Dep't of Def., No. 22-782 (W.D. Mich.); and (3) potential *qui tam* actions against the cyber researchers that he "is currently contemplating."  ECF No. 8 (Reply) at 5–6; see also App. at 12.  The Court addresses each in turn.

A. Netyksho

Milliron never explicitly declares in his Application that he needs the grand-jury materials in connection with Netyksho, though he seems to have embraced that position more robustly in his Reply. Compare App. at 2, 8, 12 (solely referencing need in FOIA cases but also characterizing grand-jury documents as exculpatory Brady material in Netyksho), with Reply at 5–6 (explaining that he "anticipate[s] requesting standing in Netyksho as amicus" if "the grand jury materials demonstrate the misconduct and malfeasance that [he] alleges"). The position, regardless, is a non-starter. Milliron is currently neither a party nor an amicus in Netyksho, and he lacks standing to "meddle in the criminal prosecution of others." Brown v. U.S. Sup. Ct., 2022 U.S. Dist. LEXIS 215974, at *3 (D.D.C. Aug. 5, 2022) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)).

He also lacks standing to assert any Brady rights on the Netyksho defendants' behalf — whether he is an amicus or not. A litigant cannot generally assert a third party's rights, see Powers v. Ohio, 499 U.S. 400, 410 (1991), as courts have acknowledged when the rights in question stem from the Fifth Amendment. See, e.g., Bryson v. United States, 419 F.2d 695, 698–99 (D.C. Cir. 1969) ("[W]e [have] held that a defendant had no standing to challenge fruits of a violation of another party's Fifth Amendment rights."); see also Eaton v. Siemens, 2008 WL 4347735, at *6 (E.D. Cal. Sept. 22, 2008) ("[P]laintiff is not a criminal defendant who alleges an injury caused by defendants' failure to produce evidence required by Brady, and thus, he has no standing to assert a violation thereunder.").

There is, accordingly, no sense in which Milliron needs any grand-jury records in connection with that matter.

B.  FOIA

Next up are the FOIA suits pending in Michigan.  The Court notes, as an initial matter, that "[a] petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened."  Fed. R. Crim. Pro. 6(e)(3)(F).  If, however, such petition seeks materials that are needed for "a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper."  Fed. R. Crim. Pro. 6(e)(3)(G).  The Rule reflects a concern that the petitioned court "will have no firsthand knowledge of the litigation in which the transcripts allegedly are needed, and no practical means by which such knowledge can be obtained."  Douglas Oil, 441 U.S. at 226.  But the Supreme Court has also recognized that "there will be cases in which the court to whom the Rule 6(e) request is directed will be able intelligently, on the basis of limited knowledge, to decide that disclosure plainly is inappropriate."  Id. at 231; see also Matter of Grand Jury Investigation, 2019 WL 13160140, at *4 (D.D.C. Oct. 30, 2019) (declining to transfer in such a scenario).  This is such a case.

That the grand-jury materials would not "assist" Milliron in the "preparation or conduct of" his FOIA lawsuits is patent.  See Baggot, 463 U.S. at 480.  The object of those cases is (at least in part) to obtain the same information he seeks in his Application — viz., "documents relating to the[] Clinton-connected cyber researchers pertaining to the DNC hack investigation."  App. at 12; see also, e.g., Milliron v. NARA, No. 23-1222 (W.D. Mich.), ECF No. 1 (NARA Compl.), ¶ 53 (seeking "Attribution Analysis provided by Manos Antonakakis and David Dagon"); Milliron v. DOD, No. 23-30 (W.D. Mich.), ECF No. 1 (DOD Compl. 2), ¶ 20 (seeking "any reports, emails, memorandums, or letters in the FBI's possession relating to the hack of the DNC or Guccifer 2.0 that were provided by David Dagon or Manos Antonakakis"); Milliron v.

DOD, No. 22-782 (W.D. Mich.), ECF No. 1 (DOD Comp. 1), ¶ 15 (seeking "any internal chat logs of [certain] DARPA personnel . . . that reference Rodney Joffe, . . . the hack of the DNC, [or] a secret communications server between Alfa Bank and Trump"). He claims that the government has refused to "confirm the existence of [those] records." App. at 13–14. But this is standard fare in that genre of litigation. See Schaerr v. United States Dep't of Just., 435 F. Supp. 3d 99, 110 (D.D.C. 2020) (refusal to confirm or deny existence of record known as "Glomar response," the propriety of which depends on whether "merely revealing the fact that an agency possesses responsive records would itself cause harm cognizable under a FOIA exception") (cleaned up), aff'd, 69 F.4th 924 (D.C. Cir. 2023). One need not obtain such confirmation or secure the records through other means to litigate whether the government's responses comply with FOIA. Indeed, such relief would obviate (rather than facilitate) the case altogether.

        The D.C. Circuit has, moreover, rejected similar attempts to invoke FOIA lawsuits as the basis for applying Rule 6(e)(3)(E)(i). In Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d 856 (D.C. Cir. 1981), the plaintiff had filed a FOIA request with the National Archives and Records Service seeking records of investigations conducted by the Watergate Special Prosecution Force between May 25, 1973, and October 15, 1975. Id. at 860. The Archives, however, withheld many responsive grand-jury materials as "matters . . . specifically exempt from disclosure by statute" (*i.e.*, Rule 6(e)) under FOIA Exemption 3. Id. at 866. The Circuit agreed that the documents were properly withheld under that exemption and, in so doing, concluded that the judicial-proceeding exception under Rule 6(e)(3)(E)(i) did not apply: "[A]n examination of the language and legislative history of that section reveals that it contemplates disclosure in the course of parallel civil proceedings and 'does not include the very proceeding instituted for the purpose of obtaining disclosure.'" Id. at

8

868 (quoting Hiss v. Dep't of Just., 441 F. Supp. 69, 70 (S.D.N.Y. 1977)); see also Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 72 (D.C. Cir. 1983) ("[W]e cannot entertain appellees' argument that Rule 6(e) includes an exception for a claim such as this one in which uncovering confidential grand jury materials is part of the ultimate relief sought in the action."); Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 24 (D.D.C. 2002) (similar).

The foregoing cases, of course, involved a request of the FOIA court to apply the judicial-proceeding exception to its own proceedings (rather than a separate petition to the grand-jury court). But that distinction seems immaterial. A petitioner cannot obtain grand-jury materials under Rule 6(e)(3)(E)(i) simply by piggybacking on a FOIA lawsuit that seeks the identical information. Were it otherwise, this exception would swallow the rule. See Am. Friends, 720 F.2d at 72 (rejecting "potentially rule-swallowing reading of the 'judicial proceeding' exception").

### C. False Claims Act

Finally, Milliron asserts for the first time in his Reply that he is "currently contemplating *qui tam* (False Claim Act) lawsuits both at the federal and state level relating to the cyber researchers," apparently on the ground that they used "DARPA resources" for their analysis. See Reply at 5. These future suits, he contends, would qualify as judicial proceedings under the Rule. Id. The Court rejects this untimely argument at the outset because the government has had no opportunity to respond to it. See United States v. Hunter, 786 F.3d 1006, 1011 (D.C. Cir. 2015) ("It is generally understood that arguments first raised in a reply brief are untimely.").

This basis for disclosure holds no water, in any event, because Milliron has not shown that he has a "particularized need" for any grand-jury records preliminarily to such a lawsuit. See Sells Eng'g, 463 U.S. at 422 (holding that even DOJ Civil Division must satisfy

"particularized need" requirement to obtain grand-jury materials in preparation for False Claims Act suit). He has made no argument that disclosure would avoid a possible injustice associated with that potential proceeding. Douglas Oil, 441 U.S. at 222; see Reply 5–8 (arguing "particularized need" solely with respect to FOIA cases). Milliron's Application is, instead, largely a fishing expedition to discover evidence of fraud that he merely speculates must have occurred. See United States v. Sutton, 2023 WL 5827718, at *13 (D.D.C. Sept. 8, 2023) (rejecting quest for grand-jury material merely to "confirm[] [defendant's] theory about the insufficiencies in the government's case").

One final note: the scope of his request is grossly overbroad and poorly defined, utilizing the kind of capacious language that courts in the FOIA context have ruled does not sufficiently describe sought-after documents. See App. at 1 (requesting, for example, "all" materials that "relat[e] to the roles" of the cyber researchers or "any" transcripts and exhibits that "relate to evidence provided or influenced" by them); Macleod v. U.S. Dep't of Homeland Sec., 2017 U.S. Dist. LEXIS 153651, at *36 (D.D.C. Sep. 21, 2017) ("Courts in this district readily find similar requests for 'any' and 'all' records that relate to some general topic to be overly-broad and invalid."). As such broad demands would likely not pass muster in that context, they should, *a fortiori*, fail here too, where the standard is "very demanding" and relief is "exceedingly rare." Sutton, 2023 WL 5827718, at *3 (citation omitted).

**IV.     Conclusion**

For the foregoing reasons, the Court will deny the Application. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: March 8, 2024

10